UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-80334-CIV-ZLOCH

RENEE BETTIS,

      Plaintiff,

v.

TOYS "R" US,

      Defendant.
_____/

Case No. 08-60565-CIV-ZLOCH

SONYA GOSSARD,

      Plaintiff,

v.

JP MORGAN CHASE & CO.,

      Defendant.
_____/

Case No. 06-20418-CIV-ZLOCH

RAMON SABATIER,

      Plaintiff,

v.

SUNTRUST BANK,

      Defendant.
_____/

Case No. 09-60259-CIV-ZLOCH

LAISNER PAUL,

      Plaintiff,

v.

D & B TILE OF HIALEAH, INC.,

      Defendant.
_____/

**ORDER**

This matter is before the Court upon the various Plaintiffs' Motions to Reconsider Striking Witnesses from Plaintiffs' Witness Lists for Evidentiary Hearing [*Bettis*, D.E. 191; *Gossard*, D.E. 87; *Sabatier*, D.E. 98[1]].  In the Motions for Reconsideration, the various Plaintiffs seek relief from my June 22, 2009, Orders striking Judges Moreno and Zloch from the Plaintiffs' witness lists for the June 24, 2009, evidentiary hearing.  *See id.*  Upon consideration, the Court grants the Plaintiffs' Motions for Reconsideration but denies the Plaintiffs' requests to vacate the Orders striking Judges Moreno and Zloch from the Plaintiffs' witness lists for the June 24, 2009, evidentiary hearing.

"[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002) (citing *Mannings v. School Board of Hillsborough County*, 149 F.R.D. 235, 235 (M.D. Fla. 1993)).  In the Eleventh Circuit, courts should grant motions for reconsideration only where (1) an intervening change in controlling law happens; (2) new evidence is discovered; (3) the need to correct clear error or prevent manifest injustice exists; or (4) a patent misunderstanding by the Court of the party's arguments has occurred.  *FTC v. Capital Choice Consumer Credit, Inc.*, 2004 WL 5141452, *2 (S.D. Fla. May 5, 2004) (citing *Z.K. Marine, Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992)).  Motions for reconsideration, however, should not be permitted to be used "'as a vehicle to present new arguments or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar arguments to test whether the Court will change its mind.'" *Id.*

---

[1]As of the time of preparing this Order, no entry for the Motion for Reconsideration filed in the other three above-captioned cases exists in the *Paul* docket.  Nevertheless, as this Order grants reconsideration of an Order filed in, among other matters, the *Paul* case, the Court enters this Order on the *Paul* docket as well as on the dockets of the other three above-styled cases.

-2-

(quoting *Brogodon v. National Healthcare Corp.,* 103 F. Supp. 2d 1332, 1338 (N.D. Ga. 2000)). If the courts allowed motions for reconsideration under such circumstances, the litigant would receive "'two bites at the apple.'" *See id.* (quoting *American Home Assurance Co. v. Glenn Estess & Assocs.*, 763 F.2d 1237, 1239 (11th Cir. 1985)).

In this case, the Court understands the Plaintiffs' Motions for Reconsideration to invoke the second, third, or fourth grounds for reconsideration stated above. More specifically, the Court's June 22, 2009, Order strikes Judge Moreno from the Plaintiffs' Witness Lists in part because the Court found that Mr. Spolter did not identify any unique, material knowledge that Judge Moreno could be anticipated to possess regarding the matters at issue in the evidentiary hearing, and the Court could not independently conceive of any such information. *See* D.E. 185 at 3. Plaintiffs, however, point out that nothing in the dockets of the cases before the Court required the Plaintiffs to file a witness list (other than to identify which witnesses from the Clerk's Office that Plaintiffs intended to call) or to describe the nature of the testimony to be elicited. *See id.* at 2-3. The Plaintiffs are correct, and in view of the fact that they now identify the nature of the testimony they seek to obtain from Judge Moreno, the Court grants the Motions for Reconsideration to allow the Court to consider the evidence for which the Plaintiffs desire to call Judge Moreno.

As for the merits of the Motions for Reconsideration, Mr. Spolter now specifies that he "wishes to elicit Chief Judge Moreno's testimony on the views and matters attributed to him" in a newspaper article concerning the various motions for recusal now before the Court in the above-styled cases. *Id.* at 3. In particular, Mr. Spolter asserts that "Chief Judge Moreno has knowledge of the actual system in use in assigning judges to cases in the Southern District of Florida." *Id.* In the newspaper article, the entirety of comments attributed to Judge Moreno are as follows:

> [T]he current chief judge says [the case assignment system] is much more complicated [than a process whereby all judges in the Southern District of Florida would have an equal chance of being assigned all cases filed in the Southern District of Florida].
>
> A tiered system is used that gives weight geographically to where the case is filed as well as how heavy a judge's docket is at the time, said U.S. District Court Judge Federico Moreno, who took over the chief judge position from Zloch in 2007.
>
> For instance, a case filed in Fort Lauderdale would circulate at random among the three judges and one senior judge there.  If their case load is heavy, the new case would then be directed to either West Palm Beach or Miami.
>
> Zloch is one of the judges who sits in Fort Lauderdale, where Spolter filed all of his cases.
>
> Senior judges also take a smaller portion of cases available, and there are special provisions for Fort Pierce, Key West and death penalty cases.  For instance, . . . U.S. District Court Judge Donald Middlebrooks, who sits in West Palm Beach, takes a number of Miami cases.
>
> All in all, the wheel is more akin to a logarithm than a game of roulette.
>
> "It's not Like the Wheel of Fortune," Moreno said:
>
> If anyone knows how judicial assignments work it is Steve Larimore, the clerk of courts for the Southern district of Florida.

D.E. 191-2 at 2.

Upon consideration of these remarks, the Court continues to find that Mr. Spolter has not identified any unique, material knowledge that Judge Moreno can be expected to possess regarding the allegations at issue in the Plaintiffs' motions to disqualify Judge Zloch.  Nothing in the article purports to address Mr. Spolter's allegations that while serving as chief judge from July 1, 2000, through July 1, 2007, Judge Zloch rigged the district's case assignment system.  Rather, the

comments attributed to Judge Moreno refer solely to the manner in which the district's case assignment system, in general, assigns cases. Moreover, in the statements noted above, Judge Moreno appears to have suggested that Mr. Steven Larimore, the Clerk of Court, possesses at least as much knowledge as he regarding the case assignment system.[2] Mr. Spolter has already indicated his intention to call the Clerk of Court as a witness in the evidentiary hearing, and the Court has directed the Clerk of Court to be prepared to testify. *See* D.E. 184, D.E. 183. Thus, it is not readily apparent to the Court what, if any, unique, material purpose the testimony of Judge Moreno would serve. For the reasons articulated in the June 22, 2009, Order striking Judge Moreno from the witness list, the Court will not entertain the testimony of Judge Moreno at the evidentiary hearing on June 24, 2009.[3]

---

[2]To the extent that the colon following "Moreno said" can be viewed as a typographical error and the statement regarding Mr. Larimore's knowledge of the case assignment system is attributable solely to the opinion of John Pacenti, the author of the article, it matters not. Mr. Spolter specifically suggested that it would not be unreasonable for a person to believe that someone from the Clerk's Office conspired with Judge Zloch to rig the assignment system. *See* D.E. 156-2 at 11. He did not indicate that he thought that a reasonable person could believe that Judge Moreno was involved. Moreover, Local Rule 3.4, S.D. Fla., delegates to the Clerk's Office the responsibility of employing the case assignment system. Consequently, it can fairly be expected that the Clerk's Office would possess the best knowledge of the manner in which the system works.

[3]The Plaintiffs further argue that the possibility that Judge Moreno might be required to transfer the subject cases in the event of Judge Zloch's recusal does not provide a basis for striking Judge Moreno from the Plaintiffs' Witness Lists. *See* D.E. 191 at 3. As the Plaintiffs explain, "transferring cases does not qualify as 'presiding' within the meaning of Rule 605." *Id.* The problem with the Plaintiffs' argument centers on the fact that it does not account for another aspect of the relief that the Plaintiffs suggest: that Judge Moreno decide the motions for recusal. *See* D.E. 188 at 6. Should Judge Zloch ultimately decide to refer any aspect of the motions for recusal to Judge Moreno, his testimony at the June 24, 2009, hearing would preclude Judge Moreno from being able to decide such referrals. Especially in view of the lack of unique, material knowledge that Judge Moreno may be expected to have regarding the allegations concerning the case assignment system, the Court declines to preclude the possibility that Judge Moreno can, in the future, if Judge Zloch so desires, address any aspects of the motions for

As for Judge Zloch, the Plaintiffs argue that the Court should allow Judge Zloch to testify because his testimony would be "highly probative." D.E. 191 at 4. Consequently, the Plaintiffs urge, "Judge Zloch should have disqualified himself [from the cases before the Court] because he is a material witness and his impartiality is reasonably questioned." *Id.* at 5.

As the Court noted in its June 22, 2009, Order, the Court can understand why testimony from Judge Zloch could be anticipated to be relevant to the issues before the Court. *See* D.E. 185 at 4. That, however, is not the beginning and the end of the considerations where the party seeking disqualification of the presiding judge desires to subject the presiding judge to examination. As the Eleventh Circuit noted less than two weeks ago, the statute addressing recusal of judges in federal court, 28 U.S.C. §455(a), places the burden to decide recusal on the judge who is the subject of the motion. *In re: Evergreen Security, Ltd.*, ___ F.3d ___ (11th Cir. Jun. 11, 2009), 2009 WL 1622386, *17. Moreover, the Eleventh Circuit has observed that "[j]udges routinely preside over motions for their own recusal." *Id.* (noting that Justice Scalia presided over a motion to recuse him in a case before the United States Supreme Court); *see also id.* (quoting *In re Corrugated Container antitrust Litigation,* 614 F.2d 958, 963 n.9 (5th Cir. 1980) ("[i]t is for the judge who is the object of the affidavit [of bias] to pass on its sufficiency.").[4] Nor is a judge required to recuse himself so that he can testify at a hearing regarding the motion for recusal. *Id.* (citing *Cheeves v. So. Clays, Inc.*, 797 F. Supp. 1570, 1582-83 (M.D. Ga. 1992) (having a judge testify is manipulated harassment, as it would cause an unjustified voluntary disqualification of the presiding judge or endless delays in the disqualification.

---

[4]Pursuant to *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

litigation); *Sensley v. Albritton*, 385 F.3d 591, 599 (5th Cir. 2004) ("a federal judge has a duty to sit where not disqualified which is equally as strong as its duty to not sit where disqualified") (quoting *Laird v. Tatum*, 409 U.S. 824, 837 (1972)).

Here, according to Mr. Spolter's own hypothesis, the Clerk's Office must have been involved if rigging of the case assignment system occurred. The Court has made available to the Plaintiffs for examination at the hearing employees of the Clerk's Office, including the Clerk of Court himself. In view of the clear Eleventh Circuit precedent, and particularly because another means of obtaining evidence concerning the allegations raised by Mr. Spolter is available, the Court strikes Judge Zloch from the Plaintiffs' Witness Lists.

**DONE AND ORDERED** this 23rd day of June, 2009.

_____
ROBIN S. ROSENBAUM
UNITED STATES MAGISTRATE JUDGE

cc:   Hon. William J. Zloch
      Hon. Federico Moreno
      Counsel of Record
      Steven M. Larimore, Esq., Court Administrator • Clerk of Court
      Jeffrey Sloman, Acting United States Attorney
      Kathleen Williams, Esq., Federal Public Defender